**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMANDIO FERREIRA DIAS,** | : | **No. 3:17cv1812** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | **(Magistrate Judge Cohn)** |
| **ANDREW M. SAUL,[1]** | : | |
| **Commissioner of Social** | : | |
| **Security**, | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is Magistrate Judge Gerald B. Cohn's report and recommendation (hereinafter "R&R") which proposes affirming the decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act. (Doc. 21). The matter is fully briefed and ripe for disposition.

---

[1] At the time the case was filed, Nancy Berryhill served as the Acting Commissioner of Social Security, and thus, plaintiff named her as the defendant. Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. See OFFICIAL SOCIAL SECURITY WEBSITE, https://www.ssa.gov/agency/commissioner.html (last accessed Sep. 30, 2019). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, as the new Commissioner of Social Security, Andrew M. Saul is automatically substituted for the original defendant. FED. R. CIV. P. 25(d).

**Background**

Plaintiff Amandio Ferreira Dias (hereinafter "plaintiff") began his quest for benefits under Title II of the Social Security Act in May of 2014, when he filed an application for disability insurance benefits. (Doc. 21, R&R at 3). Plaintiff alleges that his disability began on January 3, 2012, in connection with his lower back conditions, right eye blindness, and right hand pain. (Id.) The plaintiff was forty-seven (47) years old on September 30, 2012, the date he was last insured for the purposes of insurance benefits. (Id.) After the Social Security Administration (hereinafter "SSA") denied plaintiff's application, he requested a hearing before an Administrative Law Judge (hereinafter "ALJ"). (Id.)

In November of 2015, the ALJ held a hearing where both the plaintiff and a vocational expert testified. (Id.) In May of 2016, the ALJ ultimately found that plaintiff was not disabled under the Social Security Act. (Id. at 4). The plaintiff sought further review of his claims in August of 2017, which the Appeals Council of the Office of Disability Adjudication and Review denied. (Id.) Thus, the ALJ's May 2016 decision is the final decision of the Commissioner for the purposes of judicial review.

Plaintiff initiated the instant action on October 4, 2017, asking us to reverse the decision of the ALJ and award benefits, or remand for a new hearing. (Doc. 1). Specifically, plaintiff seeks reversal on the grounds that the ALJ's decision to

deny his claim for benefits was not supported by substantial evidence and contains errors of law. (Doc. 11). Magistrate Judge Cohn reviewed the record in this case and, on July 8, 2019, filed an R&R recommending that the final decision of the Commissioner of Social Security denying plaintiff's benefits be affirmed. (Doc. 21). The plaintiff filed objections to the magistrate judge's R&R on July 22, 2019. (Doc. 22). On August 5, 2019, the Commissioner filed a response, (Doc. 23), bringing the case to its present posture.

**Jurisdiction**

The court has federal question jurisdiction over this SSA appeal. <u>See</u> 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); <u>see also</u> 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**Legal Standard**

In disposing of objections to a magistrate judge's R&R, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

In reviewing a Social Security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C.A. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). "[S]ubstantial evidence has been defined as 'more than a mere scintilla.'" Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute their own conclusions for those of the fact-

finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently).   In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight."   Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).   "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'"   Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008).  Thus, a reviewing court must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is incapable of engaging in "substantial gainful activity" when "[his] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The ALJ evaluates disability benefits claims with a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). This analysis requires the ALJ to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity; (2) has an impairment, or combination of impairments, that is severe; (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment"; (4) has the "residual functional capacity" (hereinafter "RFC") to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4).

Applying the five-step sequential analysis for disability-related findings, the ALJ found at Step 1 that plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of January 3, 2012 through his date last insured of September 30, 2012. (Doc. 8-2, Trans. of Proceed. at 13). At Step 2, the ALJ found that plaintiff had the severe impairment of degenerative disc disease of the lumbar spine. (Id.) The ALJ found that additional impairments alleged by the plaintiff, specifically a left-hand impairment and obesity, were non-severe. (Id. at 13-14). At Step 3, the ALJ found that the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Id. at 14).

The ALJ next determined that plaintiff, through the date last insured, had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) "except that the claimant would have been able to only occasionally balance, stoop, crouch, or crawl, and he would have had to avoid climbing ladders, ropes, and scaffolds." (Id. at 15).

The ALJ then proceeded to Step 4 of the sequential evaluation where he found, after reviewing vocational expert testimony, that the plaintiff was unable to perform any past relevant work that he had performed in the past fifteen (15) years. (Id. at 20).

Finally, at Step 5, the ALJ determined that through the date last insured, plaintiff's RFC and other vocational characteristics would not have prevented him from engaging in other work that existed in the national economy. Although the ALJ recognized that the plaintiff's ability to perform work at all exertional levels is compromised by his limitations, the ALJ ultimately concluded that the plaintiff could work as weigher, checker, or measurer, a counter clerk, or a sorter, sampler, or tester.  (Id. at 21).  A vocational expert testified at the hearing before the ALJ that these jobs existed in the national economy for an individual with the plaintiff's age, education, work experience, and residual functional capacity.  (Id.) As such, because the ALJ concluded that plaintiff was capable of making a successful adjustment to other work, he determined that plaintiff was not under a disability, as defined by the Social Security Act, at any time from January 3, 2012, the alleged onset date, through September 30, 2012, the date last insured. Plaintiff then filed the instant appeal.

As noted above, the Clerk of Court assigned plaintiff's appeal to Magistrate Judge Gerald Cohn for the issuance of an R&R.  On July 8, 2019, Magistrate Judge Cohn recommended affirming the decision of the Commissioner of Social Security. (Doc. 21).  Magistrate Judge Cohn determined that the ALJ's decision to deny plaintiff's claims for benefits is supported by substantial evidence in the record.  Specifically, the magistrate judge found that: 1) the ALJ did not err in

finding plaintiff's obesity, visual impairment, depression, and hand impairment to be non-severe; 2) the ALJ did not err in assigning little weight to plaintiff's treating pain management physician; and 3) the ALJ did not err in his failure to present a hypothetical question containing all of plaintiff's credibly established limitations to the vocational expert. The plaintiff objects to Magistrate Judge Cohn's R&R on each of those grounds. We will review these objections in turn.

## I.     Whether the ALJ erred in finding that plaintiff's obesity and hand impairment are non-severe

Plaintiff argues that Magistrate Judge Cohn erred in concluding that the ALJ's findings were supported by substantial evidence because the ALJ dismissed plaintiff's obesity and hand impairment as non-severe impairments. (Doc. 22, Pl.'s Objections at 2). As discussed *supra*, at Step 2 an ALJ is required to consider whether a claimant has a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Under social security law, a "severe impairment" significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic physical work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl and handle. 20 C.F.R. § 404.1545(b).

If an ALJ determines that a claimant has a severe condition at Step 2, then the sequential analysis proceeds to step three. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. As such, generally "[a] failure to find a medical condition severe at

step two will not render a decision defective if some other medical condition was found severe at step two." Weitzel v. Colvin, 967 F. Supp. 2d 1089, 1097 (M.D. Pa. 2013). Nonetheless, finding that an impairment is non-severe at Step 2 "does not obviate the need for a separate analysis of how Plaintiff's impairment affects [his] RFC." Soboleski v. Comm'r of Soc. Sec., 2015 WL 6175904, at *2 (D.N.J. Oct. 20, 2015). Indeed, under the regulations, an ALJ is required to asses *all* of a claimant's medically determinable impairments – including those that are not severe – in combination when making the subsequent RFC determination. See 20 C.F.R. § 404.1545(a)(2); see also Weitzel, 967 F. Supp. 2d at 1097 ("[A]ll of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the residual functional capacity."). As further explained by SSR 96-8p:

> In assessing RFC, the adjudicator *must* consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not "severe." While a "non severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96–8p, 1996 WL 374184 (July 2, 1996) (emphasis added).

## A. Obesity

The plaintiff first argues that the ALJ erred by finding his obesity to be a non-severe impairment. The plaintiff contends that, regarding his obesity, the ALJ improperly opined that "there is no evidence of any specific or quantifiable impact on the claimant's musculoskeletal . . . functioning. Therefore, the claimant's obesity is not a severe impairment." (Doc. 22, Pl.'s Objections at 2). According to the plaintiff, there is no requirement that the plaintiff's documented obesity have a "specific or quantifiable impact" on his functioning, and that it was improper for the ALJ to impose such a requirement. The plaintiff further argues that the ALJ did not consider the fact that his obesity limited his ability to stand and walk for prolonged periods of time. We find no merit to plaintiff's arguments.

As an initial matter, the Court notes that the plaintiff's medical records are nearly devoid of references to his obesity. Plaintiff himself is unable to point to any restrictions or limitations in the medical record due to his obesity which must be considered. In fact, the only evidence plaintiff points to is a single notation from physical therapy which recognized the impact of plaintiff's obesity on his lumbosacral disogenic pain in 2012. (Pl.'s Br. at 11 citing 527). Further, as the magistrate judge correctly pointed out, physical therapists are not considered acceptable medical sources. See Hatton v. Comm'r of Social Sec. Admin., 131 F. App'x 877, 878 (3d Cir. 2005) (citing 20 C.F.R. § 404.1513(a))). Even with the

physical therapy note, however, the plaintiff is left with no medical evidence as to how his obesity resulted in limitations on his ability to perform basic work activities.

We further agree with the magistrate judge that plaintiff's own generalized allegation of pain, which may be inferred to be, at least in part, a consequence of his weight, is insufficient to warrant remand. Here, at the time of the administrative hearing, the plaintiff was six feet tall and weighed 240 pounds. (Doc. 8-10, Notes of Testimony ALJ Hrg. (hereinafter "N.T.") at 6). When asked by the ALJ to identify plaintiff's severe impairments, plaintiff's attorney did not mention obesity, nor did the plaintiff himself throughout the hearing. (Id. at 4). Further, to date, the plaintiff has not specified how his obesity would affect the five-step analysis undertaken by the ALJ. In Rutherford v. Barnhart, the Third Circuit concluded that when the administrative record indicates clearly, as it does here, that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding a plaintiff's limitations and impairments, generalized allegations of pain due to weight are insufficient to warrant remand. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

We now briefly address plaintiff's argument that the ALJ imposed too stringent of a standard in evaluating his obesity. The Commissioner of Social

Security Administration has issued a ruling, Social Security Ruling 02-1p,[2] which

states as follows:

> As with any other medical condition, we will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities . . . We will also consider the effects of any symptoms (such as pain or fatigue) that could limit functioning . . . Therefore, we will find that an impairment(s) is "not severe" only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities . . .

> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).

Here, the ALJ acknowledged that the plaintiff has a history of obesity, as

evidenced by a body mass index ranging from 35.3 to 38.9. (N.T. at 14). The

ALJ also considered the potential impact of obesity in causing or contributing to

co-existing impairments but concluded that there was no evidence of any impact

on the plaintiff's pulmonary, musculoskeletal, endocrine, or cardiac functioning.

Despite this fact, the ALJ still noted that plaintiff's weight was considered in

---

[2] SSR 02-1p has since been rescinded and replaced by SSR 19-2p. We rely here on SSR 02–1p because it was in effect at the time of plaintiff's hearing. However, either under provision, the Court notes that its analysis would remain the same.

determining the impact on his ability to ambulate, as well as his other body systems. Thus, we find that the ALJ properly considered plaintiff's obesity in the decision.

### B. Hand Impairment

The plaintiff also objects to the ALJ's dismissal of his left-hand injury as a non-severe impairment at Step 2. According to the plaintiff, he suffers from the residual effects of a left-hand injury for which he underwent surgery in 1999. Based on the hearing testimony he provided, as well as the prior ALJ's finding that his left-hand impairment was severe at Step 2, plaintiff contends that the ALJ erroneously found that his left-hand injury qualified as a non-severe impairment.

A review of the medical records in this case confirms the plaintiff's September 1999 left hand tenosynovectomy and interosseous. In finding this impairment to be non-severe, however, the ALJ noted that there are no substantial treatment records between January and September of 2012, the period of time at issue for the purpose of insured benefits, relating to this condition. The ALJ further noted that the medical records do not reveal any ongoing signs of musculoskeletal or neurological deficits in the plaintiff's upper extremities during this period. In fact, at in an examination in August 2013, the plaintiff was found to have normal grip strength bilaterally.

Although not expressly mentioned in the ALJ's opinion, the administrative record also contained a prior, unfavorable decision made by ALJ Zack on May 24, 2011 (the "2011 Decision"). (Doc. 8-2, at 23; Doc. 8-11, at 6-16). In the 2011 Decision, which post-dated plaintiff's hand injury by approximately twelve (12) years, ALJ Zack classified plaintiff's left-hand injury as a severe impairment at Step 2. (Doc. 8-11, at 9). ALJ Zack additionally concluded that plaintiff had the RFC to perform light work, with the following limitations:

> . . . [T]he claimant is limited to lifting/carrying 2 to 3 pounds with his non-dominant left upper extremity. While the claimant can lift up to 10 pounds frequently and 20 pounds occasionally with his right upper extremity, this lifting is restricted primarily to lifting at desk/table level with only occasional overhead lifting/carrying or lifting from floor level. He is limited to simple, routing, repetitive work dealing primarily with objects or things . . .

(Doc. 8-11, at 12).

Plaintiff asserts that, without considering the impact of the 2011 Decision on his present application for benefits, the ALJ erroneously found his left-hand injury to be non-severe at Step 2. The magistrate judge determined that this allegation of error did not warrant remand, as the ALJ was not bound by the earlier findings in the 2011 Decision.

In objecting to the magistrate judge's conclusion, plaintiff cites to Babyak v. Berryhill, 385 F. Supp. 3d 426 (2019). In Babyak, the court affirmed the proposition that "the doctrine of *res judicata* does not bind a subsequent ALJ to findings and decisions of an earlier ALJ when a claimant seeks benefits during a

subsequent period of time.'' 385 F. Supp. 3d at 429 (quoting <u>Zavilla v. Astrue</u>, Civ. No. 9-133, 2009 WL 3364853, at *13 (W.D. Pa. Oct. 16, 2009)).  The <u>Babyak</u> court further explained that:

> Although the ALJ was not bound by the prior RFC determination, the earlier findings are relevant.  In making an RFC assessment, the Third Circuit court instructs the ALJ to consider "all evidence before him." <u>Burnett v. Comm. of Soc. Sec. Admin.</u>, 220 F.3d 112, 121 (3d Cir. 2000) (citing <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999)). . . . Given that decisions by government agencies are entitled to substantial weight and must be considered, "[c]ertainly, a prior decision as to a claimant's disability under the Act by the Commissioner is evidence under [the applicable regulations] and must be considered by the ALJ when evaluating a claim for benefits." <u>Zavilla</u>, 2009 WL 3364853 at * 16. Consequently, here, [the first ALJ's] prior RFC findings should have been considered by the [second] ALJ in this action. <u>Id.</u>

<u>Babyak</u>, 385 F. Supp. 3d at 430.

Given that the ALJ failed to address the prior RFC determination of "sedentary work," which would have been conclusive on the issue of disability, the <u>Babyak</u> court thus found that the decision to deny benefits was not supported by substantial evidence.

As relevant here, the ALJ's opinion did not reference the findings set forth in the 2011 Opinion, which constitutes relevant evidence.  <u>See</u> <u>Babyak</u>, 384 F. Supp. 3d at 430; <u>see also</u> <u>Krokus v. Colvin</u>, Civ. No. 13-389, 2014 WL 31360, at *1, n.1 (W.D. Pa. Jan. 2, 2014) (noting that although former findings lack preclusive effect, they still qualify as relevant evidence); <u>Soli v. Astrue</u>, Civ. No. 8-3483, 2010 WL 2898798, at *6 (E.D. Pa. July 22, 2010) (same).  Further, at the

outset of the administrative hearing held on November 17, 2015, the ALJ indicated as follows:

> I do understand that there was a prior unfavorable decision in your case. I know that you disagreed with that decision. You filed an appeal and you requested a hearing and that's why were here today. I'm not bound by the prior decision. I'll make a new decision which is going to be based on my review of the evidence, any new evidence that's come into the file and your testimony.

(N.T. at 5-6).

Simply stated, the ALJ evidently did not address the 2011 Opinion, or otherwise explain why he made a different finding at Step 2 and in the subsequent RFC determination. See SSR 96-8p (in evaluating the RFC, an ALJ must adequately consider "the limitations and restrictions imposed by *all* of [plaintiff's] impairments"); see also Butler v. Colvin, No. 3:15-CV-1923, 2016 WL 2756268, at *16–17 (M.D. Pa. May 12, 2016) ("Particularly in the absence of a finding that Plaintiff's condition had improved, some explanation is warranted as to why a different RFC [than found by the first ALJ] is supported by substantial evidence."); accord Soltishick v. Berryhill, No. 3:18-CV-00712, 2018 WL 6839674, at *9 (M.D. Pa. Dec. 31, 2018). Therefore, the failure to reconcile the 2011 Opinion with plaintiff's underlying application for disability was erroneous in this case. See Babyak, 384 F. Supp. 3d at 430; Zavilla, 2009 WL 3364853, at *16 (holding that the decision to deny benefits was not supported by substantial

evidence when the second ALJ failed to make any findings regarding the first ALJ's decision).

For these reasons, plaintiff's objections regarding the finding of non-severity at Step 2 are sustained. We will accordingly remand the case for further consideration of the 2011 Opinion and its impact on the severity of plaintiff's left-hand impairment at Step 2, as well as any resulting limitations in the RFC evaluation.

## II.     RFC And Hypothetical Questions

In his objections to the R&R, plaintiff also contends that the ALJ erred by finding his obesity and left-hand impairment to be non-severe, and, based on this determination, overestimated his RFC. Plaintiff further claims that the hypothetical questions posed to the Vocational Expert at the administrative hearing failed to incorporate any limitations stemming from his left-hand injury, and thus did not account for his credibly established limitations.[3] As discussed *supra*, because we have found that the ALJ erred in his evaluation of plaintiff's left-hand impairment at Step 2, the court cannot conclude that the resulting RFC

---

[3] Plaintiff also objects to the ALJ's failure to assess: (1) any limitations set forth in the medical opinion Dr. Levin; and (2) any limitations arising from his obesity. As the court finds the failure to consider ALJ Zack's prior findings with respect to plaintiff's hand impairment warrants remand, we decline to address these alternative arguments. See Alvarado v. Colvin, 147 F. Supp. 3d 297, 308 (E.D. Pa. 2015) ("A remand may result in a different finding by the ALJ, making discussion of plaintiff's remaining claims moot." (citations omitted)).

determination and hypothetical questions posed to the vocational expert are supported by substantial evidence. Accordingly, plaintiff's objections are sustained, and these issues are remanded for further consideration.

### III. Whether the ALJ erred in assigning little weight to plaintiff's treating pain management physician

Next, the plaintiff contends that the ALJ should have given more weight to plaintiff's treating pain management physician, Dr. Levin. Specifically, plaintiff argues that the ALJ erroneously rejected Dr. Levin's opinion, rendered in November of 2015, based on his lay assessment of the medical evidence in the record. Plaintiff also asserts that the ALJ improperly discounted Dr. Levin's opinion based on his remote treatment relationship with the plaintiff in 2015. In response, the Commissioner submits that the magistrate judge correctly determined that the ALJ's evaluation of Dr. Levin's opinion was supported by substantial evidence.

Assessing an individual's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (quoting Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to

evaluative the claimant's case.  20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P,

1996 WL 374184 at *2.  "[O]nce the ALJ has made this [RFC] determination, [a

court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and

that RFC assessment will not be set aside if it is supported by substantial

evidence."  Black v. Berryhill, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa.

Apr. 13, 2018).

    When determining an individual's RFC, the ALJ must consider all the

evidence of the record and, regardless of its source, "evaluate every medical

opinion . . . receive[d]."  Burnett, 220 F.3d at, 121 (citations omitted; 20. C.F.R §§

404.1527(c), 404.1545(a)(3); see also SSR 96-8P, 1996 WL 374182 at *2 ("RFC

is assessed by adjudicators at each level of the administrative review process

based on all of the relevant evidence in the case record, including information

about the individual's symptoms and any 'medical source statements' . . . ").

Under the regulations, medical opinions are defined as "statements from

physicians and psychologists or other acceptable medical sources that reflect

judgments about the nature and severity of your impairment(s), including your

symptoms, diagnosis and prognosis, what you can still do despite impairment(s),

and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  When a

conflict exists in the evidence, however, "the ALJ may choose whom to credit but

'cannot reject evidence for no reason or the wrong reason.'"  Plummer v. Apfel,

186 F.3d 422, 429 (3d Cir. 1999) (quoting <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir. 1993)); <u>see also</u> <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000). It is the duty of the ALJ to explain the rationale for the weight afforded to each medical opinion, as this allows for meaningful judicial review. <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999).

Here, the ALJ considered and weighed six (6) medical opinions of record. In assessing Dr. Levin's opinion, the ALJ found that it was inconsistent with the benign findings reported by independent examining physicians, largely related to the period post-dating the lapse of plaintiff's insured status, and was completed after his treating relationship with the plaintiff had ended. Accordingly, as articulated in the R&R, the ALJ sufficiently explained his reasons for affording limited weight to the assessment of Dr. Levin. Therefore, plaintiff's objections regarding the evaluation of Dr. Levin's medical opinion are overruled.

**Conclusion**

For the reasons stated herein, with respect to plaintiff's left-hand impairment, the Court finds that the ALJ's findings at Step 2, and subsequent RFC determination and hypothetical questions posed to the vocational expert, are not supported by substantial evidence. Accordingly, the court will adopt the recommendation of the magistrate judge in part and remand the case for further

consideration of the 2011 Opinion and its impact on the plaintiff's application for disability.  An appropriate order follows.

                                              **BY THE COURT:**

**Date: September 30, 2019**               **s/ James M. Munley_____**
                                              **JUDGE JAMES M. MUNLEY**
                                              **United States District Judge**